FILED
2021 Feb-18  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **AMY ADCOCK HARP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **4:19-cv-02064-AKK** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | | |

### MEMORANDUM OPINION

Amy Harp brings this action under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").    The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision, which has become that of the Commissioner, is supported by substantial evidence.   The court therefore affirms the decision denying benefits.

### I.

Before the onset of her alleged disability, Harp worked on the assembly line of an automotive manufacturer frequently engaging in heavy and repetitive lifting. R. 46, 53–54, 374.  In June 2014, Harp applied for Title II disability insurance benefits, alleging a disability onset date of February 28, 2014.  R. 324.  Her alleged

1

disabilities included asthma, chronic asthmatic bronchitis, chronic rhinosinusitis, reduced lung capacity, sleep apnea, and severe allergies.  R. 373.

After the SSA administratively denied Harp's application, R. 138–40, she requested a formal hearing before an ALJ, R. 145–46, who likewise denied her application, R. 117–128.  The SSA Appeals Council remanded that decision to another ALJ to resolve a procedural error.  R. 133–35.  After holding two supplemental hearings, *see* R. 43–82, the second ALJ also denied Harp's application. R. 17–30.  The SSA Appeals Council declined to review the second ALJ's decision, rendering it the final decision of the Commissioner.  R. 1.  Harp then filed this action for judicial review under 42 U.S.C. § 405(g).  Doc. 1.

**II.**

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Thus, the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's. *Id.*  Instead, it must review the final decision as a whole and determine if it is

"reasonable and supported by substantial evidence." *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). As the Supreme Court recently emphasized, this burden "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence falls somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529. If substantial evidence supports the Commissioner's factual findings, then the court must affirm even if the evidence preponderates against those findings. *See id.* However, this "does not yield automatic affirmance" despite the limited scope of judicial review, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Conclusions of law, in contrast, receive de novo review. *Martin*, 894 F.2d at 1529.

## III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

3

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Commissioner;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)–(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

**IV.**

In performing the five-step sequential analysis, the ALJ initially determined that Harp had not engaged in substantial gainful activity since her alleged onset date,

thereby meeting Step One. R. 23. At Step Two, the ALJ found that Harp had the following severe impairments: asthma with reversible bronchospasms, obesity, and degenerative disc disease of the cervical spine. R. 23. Although Harp also has fibromyalgia, the ALJ concluded that this condition produced "only slight abnormalities" and was therefore non-severe. R. 23. The ALJ then found that Harp did not satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 23.

The ALJ next concluded that Harp "has the residual functional capacity [("RFC")] to perform light work" at a modified level. R. 23. Under the ALJ's RFC, Harp can: (1) lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; (2) sit, stand, and walk for six hours during an eight-hour workday; (3) reach at unlimited capacity except that she can only occasionally reach overhead bilaterally; (4) climb ramps and stairs occasionally but never ladders, ropes, or scaffolds; (5) occasionally stoop, kneel, crouch, and crawl; (6) occasionally work around moving mechanical parts or work in humid or wet conditions; and (7) can never work in dust, odors, fumes, pulmonary irritants, extreme cold temperatures, or at unprotected heights. R. 23–24.

At Step Four, the ALJ observed that Harp is "unable to perform any past relevant work." R. 28. In the final step, the ALJ concluded that "there are jobs that

exist in significant numbers in the national economy that [Harp] can perform." R. 29. To reach that conclusion, the ALJ considered Harp's "age, education, work experience, and [RFC]" alongside the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, and a vocational expert's testimony. R. 29. Because the ALJ answered Step Five negatively, she concluded that Harp was not disabled as defined by the Act. R. 30.

## V.

On appeal, Harp contends that the ALJ erred by: (1) not affording proper weight to the opinions of several treating physicians; (2) not complying with the SSA Appeals Council's remand order; (3) improperly drawing adverse inferences from an alleged lack of medical treatment; and (4) inadequately considering the side effects of Harp's pain medication. Doc. 7 at 53–63.[1] The court addresses each of these contentions in turn.

---

[1] Harp's 65-page memorandum in support of disability, doc. 7, and her 15-page reply, doc. 9, do not comply with the briefing letter this court entered, which advised the parties that "[a]ll briefs are limited to no more than 20 pages and 10 pages on reply briefs," doc. 6. The court will not strike these documents because the Commissioner has responded to them without objection. *See* doc. 8. Still, the court notes that the briefing letter is not new. To the contrary, it is the standard one the court uses and Harp's counsel, who regularly represents clients in this court, is well familiar with the briefing letter. The court's orders, including page limits, help the court to manage its docket. To state the obvious, the better approach when a party believes he or she needs additional pages is to seek relief well ahead of time from the court. The court will strike future noncompliant briefs filed by counsel for Harp.

**A.**

Harp contends that the ALJ improperly considered the opinions of her four treating physicians—William Hartzog, Charles Griffith, William Ferguson, and Allen Goldstein.  Doc. 7 at 53.  An ALJ must consider all medical opinion evidence in the record, 20 C.F.R. § 404.1527(b)–(c),[2] and "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  *Id.* at 1178–79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must give medical opinions "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quotation omitted).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Winschel*, 631 F.3d at 1179 (quoting

---

[2] 20 C.F.R. § 404.1520c superseded 20 C.F.R. § 404.1527(b) effective March 27, 2017, for claims filed after that date.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  The court cites to the regulation that was in effect at the time Harp filed her application.

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  The ALJ must clearly

articulate her reasons for not giving substantial or considerable weight to a treating

physician's opinions.  *Id.*

**1.**

Several of Harp's healthcare providers completed a "Physical Capacities

Form" consisting of seven to nine multiple choice and short answer questions.  R.

1482, 1561, 1794–95.  They generally assessed Harp as being severely affected by

her impairments.  Dr. William Hartzog, an orthopedic physician, indicated that Harp

cannot sit upright in a chair for more than fifteen minutes or stand for more than an

hour, must lie down for roughly three hours and be off task for a quarter of an eight-

hour workday, and would fail to report to work 15 to 20 days each month.  R. 1482.

Similarly, Dr. Charles Griffith, who treats Harp for asthma, indicated in the Physical

Capacities Form that Harp's impairments were severe, though his assessment

differed slightly from Dr. Hartzog's.  *See* R. 1794.  He opined that Harp cannot sit

upright in a chair or stand for more than an hour, must lie down for roughly six hours

and be off task for four hours during a workday, and would fail to report to work 20

to 25 days each month.  R. 1794.

Contrary to Harp's assertions, the ALJ did not repudiate these doctors'

opinions "in very general and vague terms."  Doc. 7 at 56.  Rather, the ALJ

considered those opinions but gave them "little weight . . . because they [were] not

8

consistent with the evidence whatsoever." R. 27. She explained that although Harp "certainly has limitations, the objective findings show[ed] only mild degeneration in the lumbar spine," and Harp's asthma showed "significant improvement" with treatment. R. 27. Moreover, the ALJ observed that "recent treatment notes [regarding Harp's asthma] document[ed] significant improvement and a reduction in symptoms" and that her back pain was conservatively treated. R. 27.

As an initial matter, although Harp suggests that the ALJ erred by not according substantial weight to the opinions and by failing to state good cause for discounting them, she does not state why the ALJ's reasons for giving the opinions little weight do not amount to good cause. *See* doc. 7 at 56–59. Nor does she specify what the ALJ failed to consider in reaching her conclusion. *See id.* Thus, "[b]y failing to specify which aspect of the ALJ's decision was incorrect or unsupported by substantial evidence, [Harp] has abandoned any challenge to the factual accuracy of the ALJ's conclusion." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 684 (11th Cir. 2019) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014)).

Moreover, substantial evidence supports the ALJ's decision to give the opinions little weight because they were not consistent with or bolstered by the

record.[3]  *See* 20 C.F.R. § 404.1527(c)(3)–(4); *Winschel*, 631 F.3d at 1179.  Although

Drs. Hartzog and Griffith opined that Harp was unable to perform even sedentary

work, the record does not demonstrate that degree of disability.  To be sure, notes

from the free clinic where Drs. Hartzog and Griffith treated Harp show her consistent

complaints of chest and back pain and fibromyalgia.  *See, e.g.,* R. 1479, 1483, 1539,

1541–42, 1682.  But those documents are devoid of any detailed assessments of her

condition.  *See* R. 1479, 1483, 1537–42, 1682.  On the other hand, an MRI of Harp's

lumbar spine showed only degenerative disc disease of "relatively mild degree,"

"minor diffuse bulging," and "mild slightly eccentric changes."  R. 1481.  Although

Harp visited the emergency room for back pain in 2016, she was discharged quickly

and prescribed an oral medication and a single injection.  *See* R. 1525–28.  Thus, as

the ALJ observed, the conservative treatment Harp received for her back pain is

inconsistent with allegations of disabling pain.  R. 27; *see also* 20 C.F.R. §

404.1529(c)(3)(iv)–(v) (stating that relevant factors for the ALJ to consider include

a claimant's treatment history).

---

[3] Additionally, the conclusory nature of the single-page Physical Capacities Forms could have provided good cause for the ALJ to discount them.  *See Winschel*, 631 F.3d at 1179; *Reuter v. Soc. Sec. Admin., Comm'r*, 2014 WL 588040, at *5 (N.D. Ala. Feb. 14, 2014) (holding that an ALJ had good cause to reject a treating physician's opinions contained in a form consisting of the physician's responses to multiple choice questions) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 11th Cir. 2005)).

Substantial evidence also supports the ALJ's conclusion that Harp's asthma was improving despite Dr. Griffith's opinion otherwise. Treatment notes show that Harp's asthma was well controlled with injections. *See, e.g.*, R. 1123, 1127, 1128. Although Harp's condition worsened when she lost her health insurance and therefore stopped receiving injections, more recent records indicate that injections are again successfully treating her asthma and that she has experienced no recent exacerbations. *See* R. 1543–60. Moreover, scans of her chest were routinely described as "unremarkable" and "normal." *See, e.g.*, R. 764, 799, 1387, 1390, 1395, 1400, 1406. Other examinations also revealed that her lungs were clear and that there was no evidence of acute or chronic disease in her chest. *See, e.g.*, R. 732, 799, 814, 816, 821, 834, 838, 1400. Even notes from the clinic where Drs. Hartzog and Griffith treated Harp indicate that her asthma and chest tightness were "doing much better" and that her chest was "clear." R. 1541.

Drs. Hartzog and Griffith's assessments also conflict with that of Shane Williamson, a nurse practitioner who completed the Physical Capacities Form. R. 1795. Williamson declined to opine on how frequently Harp needed to lie down or be off task during a workday because the answer depended on "environmental controls," among other factors. R. 1795. But Williamson did observe that Harp would likely miss work only six to eight times each month, which differs substantially from the other opinions. R. 1795. Williamson's assessment, in

addition to the other treatment notes, belie Drs. Hartzog and Griffith's opinion of

Harp as being essentially incapable of working.   Together, this evidence provides

substantial support for the ALJ's decision to give the opinions minimal weight.

**2.**

Harp also challenges the ALJ's failure to credit her doctors' conclusions that

she was unable to return to work.  *See* doc. 7 at 54–55.   In 2018, Dr. Hartzog

supplemented Harp's application for food stamps with a statement noting his belief

that Harp's back pain rendered her physically disabled.   R. 1681.   Dr. William

Ferguson, Harp's pulmonologist, similarly wrote a letter in 2014 opining that

standard treatments had not alleviated Harp's asthma and that she could not return

to work.   R. 980.   Two months later, Dr. Ferguson wrote another letter stating that

Harp's asthma was "uncontrolled and severe" and "ha[d] not improved despite

standard therapy," and reiterating that she was unable to work.   R. 900.   *See also* R.

1147, 1150, 1151, 1154 (opining that Harp was "unable to return to Honda").

Finally, Dr. Allen Goldstein, another pulmonologist, wrote two letters in

2015 explaining that Harp should not return to work because her asthma was not

under control.  R. 1439–45.

As the ALJ explained while addressing Dr. Ferguson's opinion regarding

disability, R. 25, these opinions were entitled to no weight because they concerned

an issue reserved to the Commissioner.   Under the applicable regulations, a

"statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." 20 C.F.R. § 404.1527(d). Such statements are not considered medical source opinions but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Id.* So, although the ALJ did not explicitly address Drs. Hartzog and Goldstein's letters, she was not obligated to do so because they were not medical opinions "but simply . . . opinion[s] on an issue reserved to the Commissioner's discretion." *Denomme v. Comm'r of Soc. Sec. Admin.*, 518 F. App'x 875, 878 (2013). And to the extent that the ALJ was required to consider Dr. Ferguson's opinion, she observed that his opinion was inconsistent with his own previous assessments. R. 25. Indeed, Dr. Ferguson noted that Harp's asthma was moderately persistent and that Harp described her asthma as improving but not resolved. R. 901, 908, 915, 918, 921, 924, 927, 930.

### 3.

To summarize, the record shows that the ALJ had good cause to discount the opinions of Harp's treating physicians and that substantial evidence supports the ALJ's decision. Accordingly, the ALJ did not rely simply on her own judgment, and she did not err by according the opinions minimal weight.

**B.**

Next, Harp contends that the ALJ erred by not complying with the SSA Appeals Council's remand order. Doc. 7 at 59. The Appeals Council remanded Harp's case in March 2017 because another ALJ denied her claim for benefits without holding a supplemental hearing despite Harp's request for one. R. 133–35. On remand, the Appeals Council directed the ALJ to (1) further consider Harp's RFC and appropriately explain and support the RFC assessment; (2) obtain evidence from a medical expert, if necessary; and (3) obtain supplemental evidence from a vocational expert, if warranted by the record. R. 134–35. And contrary to Harp's contention, the ALJ clearly further considered Harp's RFC because the ALJ's analysis and determination on remand differed from the earlier decision. *Compare* R. 23–24 *with* R. 123. As explained above, the ALJ's determination on remand was appropriately reasoned and supported. *See* R. 23–28. Moreover, the Appeals Council's second and third orders were conditioned on the ALJ's determination that additional evidence was necessary or warranted. R. 134–35. Harp's apparent assertion that these orders were unconditional mandates is thus incorrect. At any rate, the ALJ complied with the third instruction because she obtained supplemental evidence from two vocational experts. R. 52–57, 77–81. And although the ALJ did not obtain additional evidence from a medical expert, Harp has not established that

doing so was necessary.  Accordingly, the court finds that the ALJ appropriately complied with the Appeals Council's remand order.

## C.

Harp also asserts that the ALJ "improperly drew adverse inferences from" her "lack of medical treatment" for back pain.  Doc. 7 at 60.  She observes that regulations prohibit the ALJ from drawing "any inferences" about the claimant's "symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations."  *Id.* (citing Social Security Ruling 96–7p).  Similarly, she points to caselaw holding that noncompliance with a prescribed treatment plan does not preclude a claimant from receiving benefits if her noncompliance resulted from poverty.  *Id.*[4]

Harp's reliance on those regulations and cases misconstrues the ALJ's analysis.  In the statement in question, the ALJ observed: "As for the neck and lumbar pain, [Harp] has little treatment for neck or lumbar pain, which is not indicative of someone with disabling pain."  R. 27.  This was not a finding that Harp failed to seek medical treatment or to comply with a recommended treatment plan.  As explained above, the ALJ instead observed only that Harp was treated conservatively, which regulations authorized the ALJ to do.  *See* R. 27; 20 C.F.R. §

---

[4] *See also McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988); *Dawkins v. Bowen*, 848 F.2d 1211, 1212 (11th Cir. 1988); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

404.1529(c)(3)(iv)–(v).   Further, to the extent that this single sentence can be construed as relating to noncompliance, there was no error because "the ALJ's determination that [Harp] was not disabled was not significantly based on a finding of noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

**D.**

Finally, Harp alleges that the ALJ erred by inadequately considering her testimony concerning the alleged side effects of her pain medication.  Doc. 7 at 62.  At her hearing, Harp testified briefly that she takes Flexeril for her back and that it causes side effects.  R. 68.  Specifically, she explained: "The medication, it makes me dizzy. It makes me sleepy."  R. 68.  Harp does not offer any other evidence in the record supporting her contention that her medication causes side effects.  *See* doc. 7 at 62–64.  Nonetheless, she contends that the ALJ improperly failed to "consider or discuss how the medications affected [her] ability to work."  *Id.* at 62.

Harp cites the Eleventh Circuit's decision in *Cowart v. Schweiker* for the proposition that the ALJ's failure to address the side effects of her medication constitutes reversible error.  *Id.*  That decision concerned an ALJ's duty to develop the record when an unrepresented claimant asserted that side effects caused by her medication contributed to her disability.  *Cowart*, 662 F.2d at 733.  Representing herself at the ALJ hearing, the *Cowart* claimant testified that her many medications made her "kind of zonked most of the time."  *Id.* at 737.  Notwithstanding this

16

statement and the fact that the claimant was unrepresented, the ALJ failed to elicit additional testimony or make any findings regarding the effect of the claimant's medications on her ability to work. *Id.* Recognizing that "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability," the Eleventh Circuit held that the ALJ's failure to develop the record constituted reversable error. *Id.*

Harp's reliance on *Cowart* is misplaced. To begin, *Cowart* was based on the claimant's lack of representation at the ALJ hearing, which, among other procedural deficiencies, deprived the claimant of a "full and fair hearing." *See id.* at 733; *see also Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (distinguishing *Cowart* based on representation); *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (same). Because the *Cowart* claimant was proceeding *pro se*, the ALJ had a "special duty" to thoroughly probe the facts. *Cowart*, 662 F.2d at 735. In contrast, Harp was represented at her hearing. R. 60. Her counsel therefore could have elicited further testimony regarding the side effects caused by her medication, but they declined to do so. *See* R. 73–77. Thus, although an ALJ's duty to fully develop a record can include investigating the side effects of medications "under certain circumstances," those circumstances are not present here. *Walker*, 404 F. App'x at 366.

17

Moreover, Harp did not premise her benefits claim on experiencing disabling side effects. Instead, Harp alleged disability due to asthma, chronic asthmatic bronchitis, chronic rhinosinusitis, reduced lung capacity, sleep apnea, and severe allergies. R. 373. Nor did Harp list side effects when the ALJ asked Harp to describe her disabling impairments. R. 66. Harp testified that her disabling impairments included asthma, chronic bronchitis, chronic obstructive pulmonary disease, degenerative disc disease, and fibromyalgia. R. 66. That further distinguishes this matter from *Cowart*, where the claimant testified that her disabling impairments included "side effects from prescribed medications." 662 F.2d 733.[5]

The better comparator is *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985). There, the Circuit affirmed an ALJ's determination that a claimant was not disabled despite the ALJ's failure to address the claimant's alleged side effects. *See id.* at 1191 n.7. The ALJ was not required to investigate alleged side effects where, as here, a counseled claimant "did not allege that side effects of drugs contributed to her disability" and "the only indication in the record of side effects [was] her statement before the ALJ that her medication made her drowsy." *Id.*

---

[5] The court recognizes that *Kimbrough v. Berryhill* relied on *Cowart* to reverse an ALJ's determination for failing to "make any findings about the claimant's testimony concerning the side effects of her medication." No. 4:17-cv-01228-KOB, 2019 WL 1296318, at *11 (N.D. Ala. Mar. 21, 2019). Even so, the court believes the above-mentioned factual differences warrant a different result. And in any event, the *Kimbrough* claimant's testimony concerning the side effects she experienced was more substantive than Harp's allegations. *See id.*

Finally, the court notes that "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled." *Walker*, 404 F. App'x at 366 (citing *Ellison*, 355 F.3d at 1276). "Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Id.* Although the record consists of nearly two thousand pages, Harp does not cite any evidence supporting her assertion of disabling side effects other than her testimony. *See* doc. 7 at 62–64. And "[n]othing in [Harp's] testimony suggested that her [drowsiness] and dizziness were severe enough to be disabling either alone or in combination with her other impairments." *Walker*, 404 F. App'x at 367. Accordingly, the ALJ did not err by failing to elicit additional testimony or make findings regarding the alleged side effects of Harp's medication. *See id.*[6]

## VI.

In conclusion, substantial evidence supports the ALJ's decision that Harp is not disabled, and the ALJ applied the proper legal standards in reaching that determination. The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this Memorandum Opinion.

---

[6] The Commissioner cites *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990), for the proposition that an ALJ need not consider testimony about side effects where "the record is devoid of significant complaints of [disabling] side effects." Doc. 8 at 17. The court does not rely on that case, however, because it is distinguishable to the extent that the ALJ there made a determination about the side effects that the claimant allegedly experienced. *See Swindle*, 914 F.2d at 226.

19

**DONE** the 18th day of February, 2021.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE